DAVIS, Judge.
In this legal malpractice action, Kathryn MarElia challenges the final judgment entered on the order granting the motion for summary judgment filed by the defendants below, Yanchuck, Berman, Wadley & Zervos, P.A.; Joel Peter Yanchuck, individually; Robin Lane, P.A.; Robin Richards Lane, individually; and Anthony W. Cunningham (collectively “Appellees”). We reverse.
These proceedings began when MarElia and her husband[1] retained attorney Joel Peter Yanchuck to represent them in medical malpractice action seeking damages for the serious, permanent physical and mental disabilities suffered by their newborn son due to the allegedly negligent medical attention he received at birth. The couple subsequently retained attorneys Anthony W. Cunningham and Robin Lane to provide additional representation; Cunningham served as the lead attorney. Ultimately, on the advice of counsel, MarElia settled the malpractice action for $6.75 million, and the trial court approved the settlement.
In her complaint in the instant case, MarElia alleged that Cunningham had advised her that the settlement could be structured so that $2 million could be used to purchase two annuities that would provide a monthly payment for the benefit of the child in addition to a lump sum pay *32 ment of $100,000 every three years.[2] MarElia further alleged that she understood that these triennial payments were to be distributed to her and that they were not limited to the provision of care for the child.
In reliance on this advice, MarElia accepted the settlement agreement and the release, and Appellees prepared the necessary pleadings to obtain the trial court’s authorization to settle the claim. After the guardian ad litem approved the settlement, the trial court entered an order approving it as well. Subsequently, in an attempt to clarify the intent of the settlement agreement, Appellees submitted, and the trial court adopted, an amended order further describing the distribution of the proceeds.
MarElia and the child then moved to Gainesville, and the supervision of the guardianship of the child was transferred to Alachua County, where MarElia received the first triennial payment from the annuities. In accord with her understanding of the settlement agreement, she treated the payment as her individual property. However, the attorney ad litem for the ward took the position that the payments were intended solely for the benefit of the child and filed a declaratory action in Ala-chua County asking the court to clarify to whom the settlement agreement directed the triennial payments be made.
While the declaratory action was pending in Alachua County, MarElia sold half of her expectancy in the next triennial payment. As a result, the Alachua County circuit court entered an order directing the annuity companies not to pay the next triennial payment pending resolution of the declaratory action. When the purchaser of the expectancy failed to receive timely payment, he filed a debt collection action in Pennsylvania and obtained a consent judgment against MarElia for the $50,000 that the annuity company refused to pay plus court costs, attorney’s fees, and interest.
After further litigation in the declaratory action, the Alachua County circuit court entered an order (1) declaring that the amended order clarifying the intent of the settlement distribution was void as it was entered after the ten-day period allowed for filing a motion for rehearing,[3] (2) finding that the settlement documents did not reveal an intent that the triennial payments were to be paid to MarElia individually, and (3) determining that the payments were, in fact, intended for the benefit of the child. This order was affirmed on appeal. Marelia v. Guardianship of Marelia, 767 So.2d 1208 (Fla. 1st DCA 2000) (table decision).
MarElia then filed the instant malpractice action against Appellees, alleging that if the attorneys had properly prepared the settlement documents to reflect the settlement distribution as they had described it to her and if the amended order reflecting same had been timely and properly obtained, she would have been entitled to receive the remaining triennial payments from the annuities individually, not on behalf of the child.
In response, Appellees moved for summary judgment, arguing that as a matter *33 of law, MarElia could not demonstrate that she had suffered a loss. The trial court granted the motion, finding that the settlement documents and the order approving the settlement demonstrated that the parties intended the triennial payments to provide for the future needs of the child and his caretaker, not for MarElia individually. The trial court concluded that since this was the intent reflected by the documents, the order entered by the Alachua County circuit court finding that the amended order was void did not damage MarElia as she had no expectancy in the payments. Accordingly, the court concluded that MarElia “suffered no harm” as a result of the Alachua County circuit court’s order. The court also found that MarE-lia’s legal malpractice aetion was barred by the statute of limitations. We disagree with both conclusions.
Summary judgment is proper only if there is no genuine issue of material fact and if the moving party is entitled to judgment as a matter of law. Goeree v. Mirtsou, 923 So.2d 610 (Fla. 2d DCA 2006). Our review reveals genuine issues of fact as to Appellees’ legal representation of MarElia, precluding judgment as a matter of law.
The trial court here determined that there was no issue of fact as to whether the settlement documents and the order approving the settlement intended that the triennial payments be made for the benefit of the child. However, this conclusion misses -the mark. MarElia did not dispute that the settlement documents and resulting order reflected an intent to distribute the payments on behalf of the child; she claimed that they did reflect such an intent, albeit improperly, and that they did so as a result of her attorneys’ malpractice. Specifically, MarElia alleged that attorney Cunningham advised her that the triennial payments were to be hers, an allegation supported by Cunningham’s sworn testimony in the Alachua County proceeding where Cunningham indicated that he had worked with many parents of injured children and had’ found that such circumstances disturb and disrupt the parents’ life to such an extent that “they feel like after they’ve done it for a year or two or three or four that they feel nobody is aware of their lack of things in life.” He went on to add that in many cases, he had fashioned settlements that provide some recognition of what the parents give up in their lives to care for the injured child. Most important was the following exchange:
Q: Is the hundred thousand dollar annuity payment that is being made to Kathryn Marelia [sic], is that contingent on her taking care of Alexander? Is that payment to.her for working in the guardianship?
A: No, that was not intended to be that at all. It was intended [to] recognize just what I’ve just said.
Additionally, while the declaratory action was pending in Alachua County, apparently in response to the question of the intention of the parties in the settlement distribution, attorney Cunningham submitted an amended order to the trial judge in the medical malpractice case providing that the triennial payments were to be “paid to Kathryn Marelia [sic] to the exclusion of, and totally unconnected to her’s [sic] or any other persons [sic] payment for services performed as guardian of ALEXANDER CHARLES MARELIA....” The trial judge entered this order four years after the entry of the initial order approving the settlement.
Cunningham’s testimony and the language of the amended order clearly create issues of fact as to what Appellees advised MarElia regarding what the settlement would provide her, whether she accepted *34 the settlement based on those representations, and whether, as a result of Appel-lees’ negligence in drafting the pleadings and documents and in failing to obtain an order approving the distribution as represented to her, she was denied the triennial payments they had led her to believe she would receive. The trial court’s conclusion that the settlement documents and order approving the settlement do not reflect this intent is the very heart of the alleged negligence in the legal malpractice action. If the documents and the order of approval fail to demonstrate the intent and that failure contradicts advice and assurance Appellees provided to MarElia at the time she accepted the offer, MarElia suffered a loss. Accordingly, a question of fact remains as to what representations Appellees provided MarElia regarding the settlement distribution and whether she reasonably relied upon those representations in accepting the settlement offer. If, in fact, the documents drafted by Ap-pellees in the settlement process fail to accurately reflect those representations, representations which MarElia asserts she reasonably relied upon in making her decision regarding the settlement offer, then MarElia’s loss of the triennial payments was the result of that failure. Since genuine issues of material fact remain, the trial court erred in granting summary judgment.
Cunningham argues on appeal that even if the attorneys had advised MarElia that she would receive the payments individually, even if the documents were not properly drafted, and even if the amended order had been timely submitted, MarElia still would not have been entitled to the triennial payments. Cunningham maintains that if the guardian ad litem had received a settlement distribution proposal requiring the payments be made to MarElia individually, he would have objected to the settlement proposal and the trial court would not have entered the order approving the settlement. Accordingly, Cunningham argues, MarElia cannot show that she was damaged by the acts of Appellees.
We reject that argument. What the guardian ad litem would have done had he received such documents is, at best, speculation. In his deposition testimony, when asked what he would have done if he had known the triennial payments were to be made to MarElia individually, the guardian ad litem responded:
I would, have made some inquiry on why it was going to be paid to the mother as opposed to the minor child to determine whether there was indeed a reasonable basis, you know, to do that.
Because I do recall that the mother was driving the minor child to — for medical care. I probably would have insisted that I interview the mother before I made a recommendation with respect to that.
Moreover, Cunningham himself testified that he had obtained such settlements in the past for other clients. Impliedly, these settlements received the approval of a guardian ad litem. Finally, the trial court actually signed an amended order approving such a distribution.[4] It would be error to conclude that there is no genuine issue of fact as to whether the trial court would reject any proposed order authorizing payment to MarElia individually. Because it cannot be determined by summary judg *35 ment what the guardian ad litem might have done or what the trial court might have decided had the settlement pleadings, documents, and the order approving the settlement been drafted and submitted in accord with what MarElia alleged the attorneys represented to her, the argument must be rejected.
The only basis that would support the trial court’s conclusion that MarElia has not incurred a loss as a matter of law would be a conclusion that the law would not allow an individual parent, like MarE-lia, to receive payment from such a settlement for her individual use. However, Appellees did not argue this either at trial or on appeal. Since the only rationale given for the summary judgment was that MarElia suffered no loss because the documents and order did not reveal what MarElia claimed the intent to be, we conclude that the trial court erred, in entering final judgment on this basis.
The trial court also concluded that MarElia’s action was barred by the statute of limitations because the debt collection judgment in the Pennsylvania court put MarElia on notice of her potential cause of action for legal malpractice, which she was required to file within two years after the date of that judgment. Since her complaint was filed beyond the two-year period, the trial court concluded that the suit was barred. We disagree. The judgment entered by the Pennsylvania court did not determine whether MarElia was entitled to the triennial payments. This was not determined until the issuance of the decision by the Alachua County circuit court. It was that decision that placed MarElia on notice of her potential malpractice action.
Appellees suggest that even if the Ala-chua County circuit court had ruled in MarElia’s favor, the Pennsylvania judgment still put MarElia on notice that she had incurred a loss for the amount of the judgment that was in excess of the amount of the portion of the triennial payment that MarElia had assigned. This excess represented fees, costs, and interest. Appellees suggest that this loss to MarElia caused the statute of limitations to begin to run.
We disagree. If MarElia was placed on notice that she was to incur a loss even if she prevailed in the Alachua County circuit court, that loss would not have been attributable to Appellees. Accordingly, the. statute of limitations limiting the time in which MarElia must file her legal malpractice action against Appellees would not have begun to run until entry of the Alachua County circuit court’s order determining that the amended order approving the settlement was null and void and that the settlement documents failed to disclose the parties’ intent that the triennial payments were to be paid to MarElia individually. The trial court erred in granting summary judgment based on the expiration of the statute of limitations.
Finally, given our determination that the statute of limitations did not bar MarElia’s action, we decline to address the issue on cross-appeal, in which Appellees/Cross-Appellants argue that the statute of limitations had run on MarElia’s entire claim.
Reversed and remanded.
SILBERMAN, J„ and THREADGILL, EDWARD F., Senior Judge, Concur.

. Because MarElia and her husband divorced prior to the commencement of this lawsuit, he is not a party to this action.

. Specifically, the plan called for the purchase of two annuity agreements at the cost of $1 million each. The monthly payments from the two annuities together would total $5000, and each triennial payment would be $100,000. These payments would continue for the life of the minor child and would be guaranteed for forty years.

. The court also noted that the amended order was entered without Mar Elia’s attorney providing notice of the same to the guardian ad litem and without providing the guardian ad litem the opportunity to respond to the proposed amendment.

. All parties agree that the last amended order entered some four years after the initial order and without a hearing or notice to the guardian for the child was void. However, the fact that the trial judge approved the concept of the funds going to the mother raises a factual issue as to what would have happened if the settlement documents and approval had been properly handled initially.